IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAUL PELAYO,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>G. HERNANDEZ,<br><br>　　　　Defendant. | No. C 13-3618 RMW (PR)<br><br>ORDER GRANTING IN PART<br>AND DENYING IN PART<br>DEFENDANT'S MOTION TO<br>DISMISS, MOTION TO STRIKE,<br>AND MOTION FOR SUMMARY<br>JUDGMENT |

Plaintiff, a California state prisoner proceeding pro se, filed an amended civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that defendant Correctional Officer G. Hernandez violated plaintiff's First Amendment right to Free Exercise, right to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and right to be free from retaliation. Defendant has moved to dismiss the portions of complaint based on the failure to state a claim and on qualified immunity, to strike portion of the complaint, and for summary judgment based on a failure to exhaust. Plaintiff has filed an opposition, and defendant has filed a reply. Plaintiff has also filed an unauthorized sur-reply, to which defendant has filed an opposition. Plaintiff has filed a reply in response.

For the reasons stated below, and after a review of the record, the court GRANTS in part and DENIES in part defendant's motion to dismiss, motion to strike, and motion for summary

judgment.

## BACKGROUND[1]

Plaintiff alleges that one of the tenets of Christianity is to carry a pocket sized Bible with him at all times in order to help plaintiff stay conscious of God. (First Am. Compl. ¶ 5.) During plaintiff's incarceration at the Central Training Facility ("CTF"), plaintiff has carried his Bible with him.[2] (*Id.* ¶ 8.) Plaintiff has never been told that he was not allowed to bring his Bible into the dining area, school, work, yard, or auditorium. (*Id.*) Prison officials, including defendant, generally allowed prisoners of Islamic, Jehovah Witnesses, Catholic, Buddhist, and Native-American faiths to keep their possessions of religious artifacts in keeping with their faiths. (*Id.* ¶¶ 9-14.)

In late December 2011, plaintiff noticed that defendant began to "display a dislike" of plaintiff having his pocket Bible when entering the dining hall. (*Id.* ¶ 16.) On January 5, 2012, defendant prevented plaintiff from entering the dining hall because plaintiff had his pocket Bible with him. (*Id.*) Plaintiff explained that it was part of plaintiff's religious tenet to carry his pocket Bible with him, and defendant responded, "I don't give a fuck . . . go back to your building!" (*Id.*) Defendant explained that plaintiff would not be allowed to enter the dining hall with his pocket Bible in the future. (*Id.*) Defendant sent plaintiff back to his housing unit to return the pocket Bible. (*Id.*, Ex. A10.)

On January 12, 2012, plaintiff attempted to file an informal grievance about the incident, but defendant told him that he would not accept the grievance. (First Am. Compl. ¶¶ 17-18.) Defendant continued that plaintiff was "looking for trouble" if plaintiff continued to "press the issue." (*Id.* ¶ 19.)

---

[1] The following facts are taken in the light most favorable to plaintiff and are undisputed unless otherwise indicated.

[2] Defendant's motion for summary judgment states that plaintiff has been at CTF since July 28, 2010, and cites to plaintiff's first amended complaint ¶ 8. (MSJ at 5, ¶ 2.) However, ¶ 8 does not include the date upon which plaintiff arrived at CTF.

1   On January 18, 2012, plaintiff filed a formal grievance.  (*Id.* ¶ 20.)  In the grievance,
2   plaintiff complained that defendant violated plaintiff's right to religious freedom by refusing to
3   allow plaintiff to bring his Bible folder with him into the dining hall.  (*Id.*, Ex. A1-A3.)  In
4   response, at the first level of review, plaintiff was given a copy of a 2006 memorandum detailing
5   what inmates are allowed to bring inside the hall.  (*Id.*, Ex. A5.)  The memorandum specifically
6   stated that inmates would not be permitted to bring any items to the dining hall except a cup and
7   utensils.  (*Id.*)  At the second level of review, plaintiff's appeal of the grievance was granted in
8   part, in that plaintiff was given a copy of the procedures that prohibit inmates from bringing in
9   artifacts or documents when entering the dining hall.  (*Id.*, Ex. A11.)  The second level of review
10  also relied upon California Code of Regulations, Title 15, § 3213(a)(3), which states that prior
11  written approval of the institution head is required for an inmate to carry an approved religious
12  artifact at any time other than during regular religious or sweat events, or facility-approved
13  special events.  (*Id.*)  At the third level of review, plaintiff's appeal was denied.  (*Id.*, Ex. A13.)
14  The third level reviewer agreed with the responses at the first and second levels, and added that
15  "the control of potential contraband during major inmate movement is a priority to ensure the
16  safety of staff and inmates."  (*Id.*)

17  After plaintiff filed the initial grievance against defendant, plaintiff began to experience
18  retaliation from defendant and other prison officials, who plaintiff believed were acting in
19  concert with defendant.  (First Am. Compl. ¶ 21; Reply at 8.)  Defendant began stopping and
20  frisking plaintiff every time plaintiff would walk by him.  Specifically, defendant and others
21  would frisk only plaintiff every time plaintiff went to breakfast, would leave the dining hall, go
22  to the library, or go to the yard or church.  (First Am. Compl. ¶¶ 22-24.)  Defendant also
23  searched plaintiff's cell in April 2012, and ripped some of plaintiff's Christian-related materials.
24  (*Id.* ¶ 25.)  After the search, plaintiff noticed that one of his Bibles was missing.  (*Id.*)

25  Although plaintiff tried to file grievances about the retaliation, all of plaintiff's
26  submissions were ignored or had disappeared.  (*Id.* ¶ 28.)

27
28
Order Granting in Part and Denying in Part Defendant's Motion To Dismiss, Motion to Strike, and Motion for
Summary Judgment
P:\PRO-SE\RMW\CR.13\Pelayo618msj.wpd

3

**PLEADINGS CONSIDERED**

On October 21, 2014, defendant filed the underlying motion to dismiss, motion to strike, and motion for summary judgment. On November 12, 2014, plaintiff filed a motion to suspend briefing pursuant to Federal Rule of Civil Procedure 56(d). On November 17, 2014, plaintiff filed a request for an extension of time to file an opposition. Thereafter, on January 14, 2015, plaintiff filed his opposition to defendant's motion for summary judgment. On January 28, 2015, defendant filed his reply. On February 11, 2015, the court addressed plaintiff's November 12 and November 17 pleadings, denying plaintiff's request to suspend briefing, but granting plaintiff an extension of time within which to file his opposition for twenty-eight days. The following day, defendant filed a motion to reconsider or clarify the order, noting that plaintiff had already filed his opposition and the matter was fully briefed. More than two months later, on April 21, 2015, plaintiff filed a request to file an untimely sur-reply and the sur-reply. Defendant has filed an opposition, and plaintiff has filed a reply.

Despite the court's February 11, 2015 order granting plaintiff an extension of time to file an opposition, no additional opposition was filed and thus, defendant was not prejudiced by this order. However, plaintiff's April 21, 2015, sur-reply was unauthorized. Pursuant to Civil Local Rule 7-3(d), once a reply is filed, no additional pleading may be filed without prior court approval unless the reply contained new evidence or to bring to the court's attention a new, relevant judicial decision. Civ. L.R. 7-3(d). Neither scenario is applicable here.

After reviewing plaintiff's sur-reply, the court notes that the sur-reply raises new evidentiary assertions and a new claim outside the scope of his first amended complaint. For example, plaintiff newly argues that defendant's treatment of plaintiff was evidence of defendant's personal animus toward plaintiff based on plaintiff's faith. Plaintiff also attempts to add a claim that defendant violated plaintiff's right to equal protection.

Plaintiff is advised that an unauthorized sur-reply to a motion for summary judgment is not a proper vehicle for adding new claims to his complaint. Cf. Wasco Products, Inc. v. Southwall Technologies, Inc., 435 F.3d 989, 992 (9th Cir. 2006) ("[T]he necessary factual

Order Granting in Part and Denying in Part Defendant's Motion To Dismiss, Motion to Strike, and Motion for Summary Judgment
P:\PRO-SE\RMW\CR.13\Pelayo618msj.wpd

averments are required with respect to each material element of the underlying legal theory. . . . Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.").

Adding new claims will not be allowed where it would cause the opposing party undue prejudice. See Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994) (attempt to amend complaint requiring amendment of scheduling order under Fed. R. Civ. P. 16 must be based upon good cause). This is especially true where, as here, the plaintiff has previously filed an amended complaint. See Wagh v. Metris Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003). Adding a new claim at this late stage, after the case has been pending since August 5, 2013, and after dispositive motions have been filed and briefed, would be unduly burdensome and prejudicial to the defendant, and will not be allowed. See Brass v. County of Los Angeles, 328 F.3d 1192, 1197-98 (9th Cir. 2003) (upholding district court's finding that plaintiff waived new § 1983 arguments raised for the first time in his motion for summary judgment where nothing in the counts in the amended complaint suggested he was raising those arguments and he offered no excuse or justification for his failure to raise them earlier).

Thus, the court will accept plaintiff's unauthorized sur-reply with the limitation that the court will not consider arguments and supporting facts raised in plaintiff's sur-reply that are outside the scope of plaintiff's first amended complaint or raises new claims and arguments.

## MOTION TO DISMISS

**A.** **Standard of Review**

Failure to state a claim is a grounds for dismissal before service under both sections 1915A and 1915(e)(2), as well as under Rule 12(b)(6). Dismissal for failure to state a claim is a ruling on a question of law. See Parks School of Business, Inc., v. Symington, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

B. <u>Analysis</u>

Defendant argues that: (1) plaintiff's claim against defendant in his individual capacity under RLUIPA should be dismissed because RLUIPA does not allow suits against an individual; (2) plaintiff's claim against defendant in his individual capacity under the Free Exercise Clause should be dismissed because defendant is entitled to qualified immunity; and (3) plaintiff's claims for declaratory relief for violations of both RLUIPA and the Free Exercise Clause should be dismissed because there is no allegation that defendant has the authority to grant declaratory relief regarding the enforcement of CTF dining hall policy.[3]

    1. <u>RLUIPA against defendant in his individual capacity</u>

Plaintiff may not recover damages for claims under RLUIPA against any defendant in either an official or individual capacity, and may only seek equitable relief against a defendant in his official capacity. The Ninth Circuit has specifically stated that RLUIPA does not authorize suits against state actors acting in their individual capacity. <u>Wood v. Yordy</u>, 753 F.3d 899, 904 (9th Cir. 2014). RLUIPA "does not authorize suits against a person in anything other than an official or governmental capacity, for it is only in that capacity that funds are received." <u>Id.</u> Thus, defendant's motion to dismiss plaintiff's claim against defendant in his individual capacity under RLUIPA is GRANTED for failure to state a claim.

    2. <u>Free Exercise Clause against defendant in his individual capacity</u>

Defendant argues that he is entitled to qualified immunity for plaintiff's Free Exercise Clause claim for damages against him in his individual capacity. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required

---

[3] In plaintiff's sur-reply, plaintiff voluntarily dismisses his requests for injunctive relief against defendant, and his claims for money damages against defendant in his official capacity. Accordingly, those claims are DISMISSED. (Docket No. 35 at 1.)

1  determination of a deprivation first and then whether such right was clearly established, as
2  required by Saucier v. Katz, 533 U.S. 194 (2001)).

3  It is clear that under the First Amendment, in order to establish a free exercise violation, a
4  prisoner must show that a defendant burdened the practice of his religion without any
5  justification reasonably related to legitimate penological interests.  See Shakur v. Schriro, 514
6  F.3d 878, 883-84 (9th Cir. 2008).  A prison regulation that impinges on an inmate's First
7  Amendment rights is valid if it is reasonably related to legitimate penological interests.  See
8  O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78,
9  89 (1987).

10  In addition, according to Ninth Circuit law, "when a public official acts in reliance on a
11  duly enacted statute or ordinance, that official ordinarily is entitled to qualified immunity" unless
12  the ordinance is "patently violative of fundamental constitutional principles."  Dittman v.
13  California, 191 F.3d 1020, 1027 (9th Cir. 1999).  In an unpublished opinion, the Ninth Circuit
14  has extended this principle to a state actor who relies on an official prison policy.  See Brown v.
15  Mason, 288 Fed. Appx. 391, 392-93 (9th Cir. Aug. 1, 2008) (unpublished memorandum
16  disposition).

17  The record establishes that defendant's act of prohibiting plaintiff from bringing in his
18  pocket Bible into the dining hall was based on both a prison rule, enacted in 2006, as well as the
19  California Code of Regulations, Title 15, § 3213(a)(3).  Neither rule is patently violative of
20  fundamental constitutional principles, especially considering that the third level of appeal
21  response specifically intimated that the rule's purpose was to control potential contraband from
22  being around major inmate movement, which promotes a valid legitimate penological interest.

23  Thus, the court finds that even assuming that defendant violated a clearly established
24  right, a reasonable official would not have understood that preventing plaintiff from entering the
25  dining hall with his Bible because it violated both prison policy as well as a state regulation was
26  unlawful.  Accordingly, defendant is entitled to qualified immunity for plaintiff's Free Exercise
27  claim for damages against him in his individual capacity.

28
Order Granting in Part and Denying in Part Defendant's Motion To Dismiss, Motion to Strike, and Motion for
Summary Judgment
P:\PRO-SE\RMW\CR.13\Pelayo618msj.wpd
7

3.     Declaratory Relief

The Declaratory Judgment Act, 28 U.S.C. § 2201, "permits a federal court to declare the rights of a party whether or not further relief is or could be sought, and . . . declaratory relief may be available even though an injunction is not." See Green v. Mansour, 474 U.S. 64, 72 (1985). The Act does not create new substantive rights; it merely expands the remedies available in federal court. Shell Gulf of Mex. v. Ctr. For Biological Div., 771 F.3d 632, 635 (9th Cir. 2014). "To determine whether a declaratory judgment action presents a case or controversy, courts consider whether the facts alleged, under all the circumstances, show there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of a declaratory judgment." Id. In order to determine whether the parties have adverse legal interests, the court must first identify the law underlying the request for a declaratory judgment and then identify the adverse legal interests arising from that law. Id. at 636. "When identifying the adverse legal interests arising from the law underlying the request for declaratory relief, courts examine both the persons who can assert rights under that law and those who have obligations under it." Id.

Here, plaintiff seeks a declaration against defendant that the rule prohibiting him from bringing his pocket Bible into the dining hall violates his constitutional rights. Actions alleging that a government's policy or custom is unlawful must be brought against a defendant with the authority to enforce such a policy. Cf. Hartmann v. California Dept. of Corrections and Rehabilitation, 2010 WL 1729757, *8 (E.D. Cal. April 28, 2010) (recommending dismissal of any defendant who would be unable to appropriate and completely respond to an injunctive or declaratory order), rev'd on other grounds by 707 F.3d 1114 (9th Cir. 2013); see also Rouser v. White, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (stating that the proper defendant for injunctive relief regarding the implementation of a CDCR policy would be the Secretary of the CDCR in his official capacity). As defendant acknowledges, there is no allegation that defendant has the authority to respond to a declaratory judgment. Thus, defendant's motion to dismiss plaintiff's claims under the Free Exercise Clause and RLUIPA for declaratory relief is

Order Granting in Part and Denying in Part Defendant's Motion To Dismiss, Motion to Strike, and Motion for Summary Judgment
P:\PRO-SE\RMW\CR.13\Pelayo618msj.wpd

8

1  GRANTED for failure to state a claim.

## MOTION TO STRIKE

In plaintiff's first amended complaint, plaintiff included paragraphs describing defendant's conduct toward other inmates of non-Christian faiths in an effort to support plaintiff's claim of retaliation. (First Am. Compl. ¶¶ 9-15, 31; Opp. at 6.) Defendant argues that those paragraphs should be stricken under Federal Rule of Civil Procedure 12(f).

Rule 12(f) provides that the court may order stricken "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quotation and citation omitted). In order to determine whether to grant a motion to strike under Rule 12(f), the court must determine whether the matter the moving party seeks to have stricken is (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous. Id. at 973-74.

Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). When a court considers a motion to strike, it "must view pleadings in a light most favorable to the pleading party." In re 2TheMart.com, Inc. Sec Lit., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action. Id. However, a motion to strike is proper when a defense is insufficient as a matter of law. Chiron Corp. v. Abbott Labs., 156 F.R.D. 219, 220 (N.D. Cal. 1994).

Based on the parties' arguments, the court cannot say that the challenged paragraphs contribute nothing to plaintiff's retaliation claim. Thus, defendant's motion to strike is DENIED.

///

**MOTION FOR SUMMARY JUDGMENT**

**A.     Standard of Review**

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Generally, when defendants move for summary judgment on an affirmative defense on which they bear the burden of proof at trial, they must come forward with evidence which would entitle them to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). On a motion for summary judgment for non-exhaustion, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1172. If defendants carry that burden, the prisoner has the burden of production. "That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with defendants, however. Id. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence on a disputed material fact. See T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be

Order Granting in Part and Denying in Part Defendant's Motion To Dismiss, Motion to Strike, and Motion for Summary Judgment
P:\PRO-SE\RMW\CR.13\Pelayo618msj.wpd

viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

**B.     Analysis**

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001).

The State of California provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the California Department of Corrections and Rehabilitation or his designee. Id. § 3084.1(b), § 3084.7(d)(3); see Woodford v. Ngo, 548 U.S. 81, 85-86 (2006).

Defendant argues that plaintiff has failed to exhaust his retaliation claim. Plaintiff concedes that he did not exhaust, but argues that he was prevented from doing so by CTF officials. In support of plaintiff's argument, he attaches exhibits to his opposition. In the exhibits, plaintiff includes six CDCR Form-22 complaints (Pl. Opp., Ex. A; Pl. Decl. ¶¶ 3-6, 9, 11-13), several letters to outside agencies, and one administrative grievance filed on CDCR Form 602. (Pl. Opp., Ex. A.)

CDCR Form 22 is a form upon which inmates may request an interview, item, or service. Cal. Code Regs., tit. 15, § 3086(a). As noted above, exhaustion must be proper, i.e., an inmate

Order Granting in Part and Denying in Part Defendant's Motion To Dismiss, Motion to Strike, and Motion for Summary Judgment
P:\PRO-SE\RMW\CR.13\Pelayo618msj.wpd

11

must comply with prison administrative rules. See Woodford, 548 U.S. at 90-91 (holding "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"). The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Id. at 83. It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

Under the regulations, as amended effective January 28, 2011, the informal grievance level, i.e., CDCR Form 22, was omitted and there are now three levels: first level appeal, second level appeal, and third level appeal. Cal. Code Regs. tit. 15, § 3084.7. The law is clear that a CDCR Form 22 is not part of the exhaustion requirement. See Cal. Code Regs., tit. 15 § 3086(i) ("An inmate or parolee's documented use of a Request for Interview, Item or Service form does not constitute exhaustion of administrative remedies as defined in subsection 3084.1(b)"). Consequently, plaintiff's filing of a request for interview, i.e., CDCR Form 22, does not satisfy the exhaustion requirement. Rather, as discussed above, the CDCR rules require inmates to properly exhaust by first submitting a CDCR Form 602. Cal. Code Regs., tit. 15, §§ 3084.2(a), 3084.7.

Similarly, to the extent plaintiff claims that his letters to outside agencies should satisfy exhaustion, that assertion has been previously foreclosed. O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1063 (9th Cir. 2007) (filing grievance with an outside agency (e.g., the Department of Justice) that is authorized to investigate does not satisfy the exhaustion requirement if it does not terminate the inmate's rights to pursue his claims internally).

Defendant asserts that plaintiff submitted 8 separate 602 grievances between January 5, 2012 and September 23, 2014, but none of those appeals contained any of the allegations upon which plaintiff bases his retaliation claim. Moreover, only four of those appeals were exhausted at the third level of review, and none of those mention defendant or the allegation of retaliation by defendant.

The only 602 plaintiff attaches in his exhibits to demonstrate exhaustion or attempted

Order Granting in Part and Denying in Part Defendant's Motion To Dismiss, Motion to Strike, and Motion for Summary Judgment
P:\PRO-SE\RMW\CR.13\Pelayo618msj.wpd

exhaustion is one submitted on March 12, 2012. (Pl. Opp., Ex. A.) In that 602, plaintiff complains that Lt. Mensing interviewed plaintiff about the grievance plaintiff submitted against defendant for prohibiting plaintiff from entering the dining hall with his Bible. (Id.) In the 602, plaintiff alleged that Lt. Mensing asked plaintiff why plaintiff carried the Bible around, and then told plaintiff that he did not care about plaintiff's religion, and that if Mensing saw plaintiff with his Bible at the dining hall, Mensing would take it from him. (Id.) Plaintiff asserts that he never received a response to this 602 against Mensing. (Pl. Decl. ¶ 10.) Moreover, plaintiff concedes that the appeal complained about the "retaliatory stance that Lt. Mensing took," and does not allege that the grievance complained about defendant's actions. Even assuming that plaintiff's attempt to file a 602 against Mensing was thwarted, this grievance would not have satisfied the exhaustion requirement because it did not have the same subject and request for relief as the federal complaint. See, e.g., O'Guinn, 502 F.3d at 1062, 1063 (even with liberal construction, grievance requesting a lower bunk due to poor balance resulting from a previous brain injury was not equivalent to, and therefore did not exhaust administrative remedies for, claims of denial of mental health treatment in violation of the ADA and Rehabilitation Act).

In plaintiff's sur-reply, plaintiff argues that he stopped trying to use the formal appeals process because defendant "and his confederates began their campaign of terrorizing" plaintiff, so plaintiff used the informal level of resolution CDCR Form 22 instead. Plaintiff believed that filing another formal grievance on defendant "would basically be poking an already angry bear with a stick."

Although a prisoner's fear of retaliation may be sufficient to render the inmate grievance procedure effectively unavailable and thereby excuse a failure to exhaust, see McBride v. Lopez, No. 12-17682, 2015 WL 3953483, *3 (9th Cir. June 30, 2015), "[t]o show that a threat rendered the prison grievance system unavailable, a prisoner must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance." Id. at *4. Plaintiff's belief must also be objectively reasonable, meaning that "there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary

Order Granting in Part and Denying in Part Defendant's Motion To Dismiss, Motion to Strike, and Motion for Summary Judgment
P:\PRO-SE\RMW\CR.13\Pelayo618msj.wpd

firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." Id.; see id. (in an excessive force suit, prisoner's allegations that the guards threatened him after the beating by saying he was "lucky" because his injuries "could have been much worse" failed to meet the objective prong).

To the extent plaintiff alleges that defendant told plaintiff that plaintiff was "looking for trouble" if plaintiff continued to "press the issue" after plaintiff attempted to give defendant a Form 22 complaining about the prohibition of bringing his pocket Bible into the dining hall, taken by itself, the threat could be interpreted as a threat not to use the grievance system. However, plaintiff also states that three days after this threat, plaintiff attempted to complain to other prison officials about the matter, and three days after that, plaintiff actually did file a formal 602 grievance against defendant. Taking all the facts together, the court concludes that plaintiff has not sufficiently alleged that he was "actually deterred" from filing a grievance about defendant's retaliation. See id.

With respect to the allegations of retaliatory frisking and the cell search, even assuming that plaintiff meets the subjective prong of the test, in order to meet the objective prong, where there is no explicit reference to the grievance system, "there must be some basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have understood the prison official's actions to threaten retaliation if the prisoner chose to utilize the prison's grievance system." Id. Here, the record lacks any objective indication that the allegations of frisking and the cell search have any apparent connection to plaintiff's use of the grievance system. See id. at *5.

Accordingly, plaintiff has failed to demonstrate that the grievance system was rendered effectively unavailable by the conduct of prison officials. Plaintiff did not exhaust his administrative remedies, and has not provided evidence showing that "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).

Order Granting in Part and Denying in Part Defendant's Motion To Dismiss, Motion to Strike, and Motion for Summary Judgment
P:\PRO-SE\RMW\CR.13\Pelayo618msj.wpd

1    Accordingly, the court GRANTS defendant's motion for summary judgment on
2    plaintiff's retaliation claim based on the failure to exhaust.

## CONCLUSION

Defendant's motion to dismiss, motion to strike, and motion for summary judgment is GRANTED in part and DENIED in part.  Defendant's motion to dismiss is GRANTED.  Defendant's motion to strike is DENIED.  Defendant's motion for summary judgment is GRANTED.  The Clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED: _____

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

Order Granting in Part and Denying in Part Defendant's Motion To Dismiss, Motion to Strike, and Motion for Summary Judgment
P:\PRO-SE\RMW\CR.13\Pelayo618msj.wpd

15

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAUL PELAYO,

        Plaintiff,

  v.

G. HERNANDEZ et al,

        Defendant.

Case Number: CV13-03618 RMW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 11, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Saul Pelayo P-61090
Correctional Training Facility
CW-304UP
P.O. Box 689
Soledad, CA 93960

Dated: August 11, 2015

                                        Richard W. Wieking, Clerk
                                        By: Jackie Lynn Garcia, Deputy Clerk